## GUTHRIE et ux. v. COUNTRY CLUB ESTATES CO.

### No. 2621.

Court of Civil Appeals of Texas. El Paso.

Jan. 21, 1932.

Rehearing Denied Feb. 18, 1932.

Fulbright, Crooker & Freeman, of Houston, for appellants.

Williams, Lee, Hill, Sears & Kennerly, of Houston (Geo. D. Sears, of Houston, of counsel), for appellee.

WALTHALL, J.

This is the second appeal of this case; the first is reported in Guthrie v. Country Club Estates Company (Tex. Civ. App.) 26 S.W. (2d) 403, to which we refer for a fuller statement of the history of the matters involved in the transactions between the parties than we feel necessary to make here. The former appeal was heard by the Austin Court of Civil Appeals on February 26, 1930. Appellants' fourth amended original petition was filed in November, 1928, and appellee's last amended original answer was filed in December, 1928, from which we infer that the petition and answer upon which the parties went to trial were the same in the two trials.

The record shows that appellants announced in open court on this trial that they would not further prosecute their suit against W. C. Hogg, and judgment was entered in his favor, so that we need not make reference to him as a party in the suit.

Thomas H. Guthrie and wife, Verna C. Guthrie, appellants, brought this suit against the Country Club Estates Company, a corporation, appellee, to recover damages in the sum of $45,000, which they allege they are entitled to receive as commissions on sales of real estate and which they would have made under a contract of employment between them and appellee, but were prevented from making said sales and earning said commissions by reason of the contract of employment alleged to have existed between appellants and appellee.

After alleging the acquisition by Thomas H. Guthrie, T. W. House, and Thos. H. Ball, as a partnership, of a tract of 362 acres of land near the city of Houston for the purpose of developing a part of the acreage for a Country Club golf course, and a part for a high-class restricted residential addition to the city, and with the plan, purpose, and agreement between the partners that a corporation would later be organized in the nature of a Country and Social Club, which would acquire said land from said partnership, and improve, own, subdivide, and sell off that portion which would be subdivided into an addition to said city for residential purposes, appellants allege that on February 9, 1923, it was orally agreed by and between the parties named as constituting said partnership that Thomas H. Guthrie Company, appellants herein, should be appointed general sales manager of all of said property so acquired by them, which should be platted and offered for sale, and further alleged an agreement, in substance, that they (appellants) should have exclusive right in the future to sell the residential addition as agents, and should have and receive upon and for the sale of all of said property so to be offered for sale, so long as any of said division remained unsold, a commission, thereafter agreed to be 5 per cent. of the sale price of all of said land.

Appellants allege that in pursuance of said plans and purposes and said agreement, said corporation, appellee herein, was formed; that said land was conveyed to said corporation, which took over and continued the development of said land, the officers of said

corporation having full knowledge and information as to the said plans, purposes, and. agreements of the individuals above named, and the acts done in pursuance thereof; and that said corporation, with full knowledge of all of said facts, continued without change or reservation the same plans and policies and the agreement with appellants, made as above stated, and thereby on November 16, 1923, adopted, acquiesced in, ratified, and confirmed said agreement constituting and appointing appellants general sales manager for appellee of said property, and agreed to pay appellants as in said agreement stated.

Appellants allege they entered upon the performance of their duties under the agreement as alleged, and sold off said property of the value of over $400,000; that had appellants been permitted to continue and perform their said contract they could and would have sold, within a reasonable time, all of the balance of said property remaining unsold consisting of lots and tracts of land of the aggregate value of $900,000, and for which the appellants were entitled to receive a commission of 5 per cent. amounting to the sum of $45,000, for which he sues.

Appellants allege that on June 16, 1924, appellee, without cause, discharged appellants as manager and sales agent of said property and terminated said contract. There is much else alleged by appellants, but in view of the issues submitted on the trial of the case, the dismissal of W. C. Hogg from the suit, and other matters referred to later, we need not here state.

Appellee answered by general denial.

The court submitted a number of questions to the jury, but only two of which were answered. The two questions submitted and answered are as follows:

"Special Issue No. 1: Did Thos. H. Ball, and T. W. House at any time prior to November 17, 1923, agree with plaintiff, Thos. H. Guthrie, that if he, Guthrie, would assist them in preparing a part of the 362 acres of land in question for use as a golf course and country club, and the balance thereof for sale as a residential subdivision, that he, Guthrie, could have the right in the future to sell all of said portion of said land devoted to residential purposes so long as any of said lots remained unsold, and receive a percentage of the purchase price thereof for his entire service? Answer 'yes' or 'no' as you find the facts to be."

"Special Issue No. 2: After November 16, 1923, did Country Club Estates Company, acting by and through Thomas H. Ball, enter into a contract with plaintiff, Thomas H. Guthrie, by which said company agreed to allow plaintiff the exclusive right to sell all of the property in question devoted to residential purposes so long as any of said lots remain unsold? Answer 'Yes' or 'no' as you find the facts to be."

The jury answered, "No," to each of the above two questions, but returned no answers to any of the other questions submitted.

The court, in the judgment, after stating issues Nos. 1 and 2 and the jury's answers thereto, states: "And under an instruction by the court, agreed to by both parties, such answers made unnecessary answers by the jury to the remaining issues submitted, being numbers 3 to 15, inclusive."

The court entered judgment in favor of appellee, and appellants appeal.

### Opinion.

Appellants, under their first and second propositions, submit that the verdict of the jury is contrary to and unsupported by the weight and preponderance of the evidence, and for that reason the judgment should be set aside and the cause remanded.

The evidence is voluminous, covering some 322 pages of the statement of facts, embracing the minutes of the appellee corporation, with a number of maps as exhibits. The agreement as to appellant's employment was oral, and developed from a series of conversations over a period of time and conversations and dealings between Ball, House, and Guthrie.

■ The jury is the judge of the facts established by the evidence, the credibility of witnesses, and the weight to be given to the testimony of the witnesses. No question is presented as to error in admitting or excluding evidence. As said by the Supreme Court in Harpold v. Moss, 101 Tex. 540, 109 S. W. 928: "To judge of the credibility of the witnesses and the weight to be given to their testimony is peculiarly the province of the jury." The only question presented is as to the sufficiency of the evidence to sustain the findings of the jury on the two issues submitted and upon which findings were made.

The parties by their pleadings joined issue on the questions submitted to the jury on the two special issues.

■ The jury being the judge of the credibility of the witnesses in determining the facts proved, it has been well established that in considering whether the facts found by the jury are supported by the evidence, only evidence favorable to such finding must be considered, since the jury's finding necessarily implies that evidence favorable to such finding was believed and accepted by the jury. To hold otherwise would be for an appellate court to substitute its finding for that of the jury. Jackson v. Watson, 10 S.W.(2d) 977, by the Commission of Appeals. In Texas Jurisprudence, vol. 3, p. 1090, it is said that: "It is settled that only evidence which tends to support a judgment on a finding of fact, may be considered, and all evidence favorable to the

opposite contention should be disregarded. In other words, it is not within the province of the appellate court to compare the probative force of the evidence of the opposite sides," and refers to a number of cases so holding. In Merrill v. L. Ry. & Nav. Co. of Texas (Tex. Civ. App.) 4·S.W.(2d) 568, 569, the Texarkana court, speaking through Justice Levy, said: "The objection that the findings of the jury are against the preponderance of the evidence may not be sustained. The evidence is quite conflicting, and the decision of the jury would be controlling."

Even if it could be said, which we do not hold, that the jury's findings are against the weight and preponderance of the evidence, there is nothing in the record to show that the conclusion reached was wrong or was the result of passion, prejudice, or improper motive. The point of controversy submitted, under the first proposition, was whether, prior to November 17, 1923, that is, while the parties were acting together as a partnership, the parties expressly agreed that Guthrie should have the right in the future to sell all of that portion of said land devoted to residential purposes so long as any should remain unsold.

Considering the issue No. 1, as submitted to the jury, to contain the exact point of the alleged agreement prior to the incorporation, without stating the question to which the answer was a response, the witness Thos. H. Ball, speaking of the agreement, testified: "I never considered the question of whether or not Country Club Estates Company could withdraw or terminate the sales contract at will, with Mr. Guthrie. The thought never entered into my head; I never thought of it, never discussed it with Mr. Guthrie; I never discussed it with the Board or any member of the Board. If what you mean is that he should have the right to sell all of those lots until they were all sold, that never came up with Mr. Guthrie; I never talked with him, never talked with any member of the Board, never thought about it. We just assumed before we organized that he was going to sell the property, and after we organized I assumed he was going to sell the property, and I thought the only thing to come up was just the commission, which was what we tried to do with him afterwards. I never thought about it; it never occurred to me."

T. W. House was asked: "Now, during those preliminary negotiations, and during the promotion of the enterprises, before the company was incorporated, say whether or not ·there was any understanding either of a general or specific nature between and·among you, Col. Ball and Thos. H. Guthrie, or Thos. H. Guthrie Company, to the effect that after the company was organized that Thos. H. Guthrie Company would have the right·to sell its property to the public, which right could not be terminated by the Country·Club Estates,

that would be a perpetual one so long as that property was for sale? Was such agreement entered into by you or not?" The witness answered: "Not to be perpetual; it was understood he was to have the right to sell it, just between the three of us."

Whatever contract or agreement there was with appellant took place with appellant, Ball, and House, and while the matters in contemplation were in their preliminary stages, and prior to November, 1923, at which time the appellant corporation was formed. At that time others, including the three former partners, were named as directors. At and after that time the minutes of the corporation show that the titles to the two tracts of land, the House tract and the Baker tract, constituting the 362 acres of land, then in Ball, were taken over by the corporation, and other matters pertaining to the business of the corporation transacted. Only the following appears on the minutes of the corporation with reference to the agency of appellant: "On motion of Thos. H. Ball, duly seconded by G. L. Noble. Thos. H. Guthrie Co. was appointed General Sales Manager for the Country Club Estates Company property; the terms of contract for services of such sales manager to be hereafter submitted by Price and Plans Committee for approval by the Board of Directors of this Company."

We understand that during this period the residential part of the lands were put on the market and appellants sold approximately $425,000 worth of it, and received their commissions, of which no question is presented, and leaving unsold of the residential lots valued at approximately $900,000.

In the spring of 1924, Kennith Womak interested W. C. Hogg and his associates in the purchase of all of the stock of appellee corporation. Mr. Hogg and his associates desired and planned to acquire additional lands for residential purposes. To this end Mr. Hogg caused Hugh Potter to examine the minutes and records of appellee corporation, to interview its officers and employees and ascertain the status of their contracts. Without quoting the several conversations had between Guthrie and Womak and Hogg, the record shows that under such investigation appellant Thos. H. Guthrie, in reply to the inquiry made of him, denied that he had any contract or agreement which the corporation could not terminate at will. Information of like import was obtained from Col. Ball, as to any agreement with the corporation. After such investigation W. C. Hogg and his associates purchased all of the stock of the corporation, including that of appellant, paying therefor double its par value. At the time of such purchase all of the former officers·and directors resigned. Shortly·thereafter some friction developed between appellant and Potter, the new president of the corporation, and·on June 16, 1924, appellant

was given thirty days thereafter in which to close up any pending deals with prospective purchasers. Appellant at once abandoned any further efforts, and on January 5, 1927, filed this suit.

The suit is to recover commissions on the lots remaining unsold of the residental part of the original 362 acres of land.

The only question remaining to be considered is the sufficiency of the evidence to justify the submission of issue No. 2, as a finding of the jury, whether, after November 16, 1923, appellee, acting through Thos. H. Ball, entered into a contract with appellant by which appellee agreed to allow appellant the exclusive right to sell all of the property in question devoted to residental purposes, so long as any of said lots remained unsold. The jury answered, "No."

Appellant pleaded in the alternative that if appellee after incorporation did not adopt and ratify the contract as it existed prior to that time, that is, on February 9, 1923, it did do so on November 16, 1923.

The record shows no agreement of employment after the corporation was formed; all that is shown is the above statement from the minutes, to the effect that appellant was appointed sales manager of appellee and that the terms of contract for such services were thereafter to be submitted for approval by the Price and Plans Committee, which the record does not show was done, and further the commission should be 5 per cent. of the selling price of lands sold.

We have carefully reviewed the record, and have concluded that the evidence was sufficient to support the verdict on the two issues.

Finding no reversible error, the case is affirmed.